UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **RUSSELL HEWITT** | **CIVIL ACTION NO. 07-839** |
| **VS.** | **SECTION P** |
| **ROBERT HENDERSON, ET AL.** | **JUDGE MINALDI** |
| | **MAGISTRATE JUDGE WILSON** |

REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Russell Hewitt[1] on May 14, 2007. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated in "Extended Lockdown" at the C.Paul Phelps Correctional Center (CPP), DeQuincy, Louisiana, and complains that is First Amendment rights to the free exercise of religion have been violated. He names as defendants CPP Warden Robert Henderson, CPP Chaplain Robert Colquette, CPP Deputy Warden Nathan Cain, CPP Program Warden Jolene Constance, and the Department of Corrections Secretary's designee Linda Ramsey. As a result of the alleged constitutional violations, plaintiff seeks injunctive relief, as well as the recovery of punitive and compensatory damages in the sum of $350.00 from each defendant.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

---

[1] The complaint was originally filed on behalf of plaintiff and several other inmates. On May 30, 2007, this court dismissed all claims but those filed by plaintiff Hewitt. The other inmates were advised that they could proceed with separate suits should they so desire. [Doc. 4].

## Statement of the Case

Plaintiff, an adherent to the Islam faith, claims that certain prison regulations are onerous and discriminatory as applied to him. As a result, he states that he has been deprived, for extended periods, of the opportunity to practice his religion without fear of penalty. Plaintiff apparently addressed this issue via CPP's grievance procedure, as he filed the first step response [Doc. #1-1, p.6] along with his complaint. The response details his allegation that his rights are being violated as he is not given time off from work on Friday afternoon for prayer. In this regard, the response notes that plaintiff's master prison record indicates that his religious preference is other or Baptist, not Muslim. It is also stated that plaintiff must change his record to adequately reflect his religious preference as CPP must be able to prepare for the proper number of inmates attending services or needing special meals, etc. The response continues by explaining that plaintiff is assigned to extended lockdown, and as such he is not in a situation to be let off from work for prayer. It is then noted that plaintiff can pray as he wishes in the cellblock. Further, it is stated that all inmates at PCC are required to work on Friday afternoons, and that plaintiff is requesting an exception to what all other inmates are required to do. The response points out that PCC has a penological interest in applying rules consistently to the inmates and in abiding by standards which state that an inmate's workday should approximate the free world work day of eight hours a day on Monday through Friday. Nevertheless, the respondent points out that should plaintiff be released from extended lockdown, he will be excused from work at 11:00 a.m. on Fridays for prayer. However, plaintiff is informed that he will be required to work on Saturday to make-up the missed work on Friday.

## Law and Analysis

**Frivolity Review**

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).  A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).  Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

3

*(Unknown) Badge No. 153*, 23 F.3d at 97. In the present case, plaintiff's complaint, along with the documentation filed therewith, provide an adequate description of the facts relied upon to support his theory of liability. Thus, further amendment of his pleading would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undesigned concludes, for the following reasons, that the complaint should be denied and dismissed with prejudice as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §1915 and 1915A.

**Religious Freedom**

Inmates such as plaintiff retain the protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Of course, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including institutional security. See *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry:

(1) Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward by prison officials to justify the regulation?

(2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level?

(3) What impact will accommodation of the asserted constitutional right have on

4

>    guards and other inmates and on the allocation of prison resources generally?
>
> (4)   Are alternatives to the prison regulation available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000) (internal quotations and citations omitted); see also *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992). Plaintiff's complaint is clearly controlled by the Supreme Court's decision in the factually analogous case of *O'Lone v. Estate of Shabazz, supra*. In that case, the inmate-plaintiffs complained (as does plaintiff Hewitt) that they were not allowed to attend the weekly Muslim congregational service held on Friday evenings because of their assignments to work details outside the main prison grounds. *Id.*, at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs, rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff-inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352.

Like the plaintiffs in *Shabazz*, this plaintiff has not been deprived of <u>all</u> means of religious expression. In fact, plaintiff has not been denied his right to worship at all. Rather, as detailed in the first response to plaintiff's ARP, it appears that plaintiff was simply made to adhere to rules that are generally applicable to all inmates at CPP which are not directed at any particular religion or religious belief. See *Employment Div. V. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (holding that neutral laws of general applicability that proscribe or require conduct contrary to religious belief do not violate Free Exercise Clause).

5

Further, even if the regulation did impinge upon plaintiff's right to exercise his religious beliefs, the reasonableness of the regulation would render the regulation valid. *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002). See also, *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir.1988) (holding that even a prison regulation which <u>prohibited</u> Muslim inmates from attending Friday services was not unconstitutionally restrictive because it satisfied all four "reasonableness" considerations). "[T]he loss of [plaintiff's] absolute freedom of religious expression is but one sacrifice required by [his] incarceration...." *Scott v. Mississippi Dep't of Corrections*, 961 F.2d at 82. See *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir.1995) ("Reasonable time, place, or manner restrictions upon communal religious gatherings do not necessitate the identification of a compelling state interest.") Prisoners, such as plaintiff, that are confined to extended lockdown have already been denied most of the privileges afforded to their fellow inmates in general population. Therefore, prison administrators are limited in what additional privileges can be denied for continued misbehavior, and the few remaining sanctions serve a legitimate penological objective.

In short, plaintiff has failed to demonstrate that his First Amendment free-exercise right has been violated. Simply put, the defendants' actions did not deny plaintiff his free-exercise of religion rights, and plaintiff had sufficient avenues to pursue his religious exercises. Thus, the court concludes that plaintiff's complaint is frivolous.[2]

---

[2] In the alternative, the court notes that plaintiff's claims herein would nevertheless be barred by the physical injury requirement of § 1997e(e), which states that no federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. See, *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), which held that § 1997e(e) applied to a prisoner's First Amendment claims. More specifically, *Geiger* stated that Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury. Thus, as in *Geiger*, plaintiff's failure to allege physical injury falls squarely under § 1997e(e)'s bar, precluding his recovery of compensatory damages for emotional or mental injuries allegedly suffered as a result of the purported First Amendment violation. In the present case, the very nature of plaintiff's claims fall with the scope of emotional injury. Further, plaintiff's punitive damage claim has no merit as punitive damages can be awarded under section 1983 only if official conduct is motivated by "evil intent" or demonstrates "reckless or callous disregard for a constitutional right." *Smith v. Wade*, 410 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed. 2d 632 (1983). Even liberally construing plaintiff's complaint

Finally, to the extent that this complaint may be liberally construed to raise an equal protection claim, plaintiff has again failed to state a claim upon which relief may be granted. To state an equal protection claim under § 1983, a plaintiff must show that "the governmental action in question classif[ies] or distinguish[es] between two or more relevant persons or groups[,] ... or ... impermissibly interferes with a fundamental right." *Edwards v. Johnson*, 209 F.3d 772, 780 (5th Cir.2000) (internal quotations and citations omitted). The plaintiff must specifically demonstrate that the prison officials acted with a discriminatory purpose. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.*; *Edwards v. Johnson*, 209 F.3d at 780.

While plaintiff may be a member of an identifiable group within the prison, he has failed to show that the policy or practice complained of was enacted with any discriminatory purpose. See *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) (finding no constitutional violation where plaintiffs were "given the same reasonable opportunity to practice their faith as that provided other religious groups"). Because plaintiff has failed to demonstrate a violation of his individual constitutional rights or a violation of the rights of all Muslim inmates housed in CPP to practice their religion, his equal protection claim (to the extent that such a claim has been asserted) has no merit.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties

---

herein, his allegations in no way rise to the level necessary to award punitive damages.

aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, September 6, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE